UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:16-cv-80870 ZLOCH/HUNT

JOSEPH L. WORRELL,
And Military Dependents,
Jointly and Severally,

      Plaintiffs,

v.

EMIGRANT MORTGAGE COMPANY, INC.,
BECKER & POLIAKOFF, P.A., ROBIN R.
WEINER, ESQ., ALAN J. FISHER, PA.

      Defendants.

_____/

**DEFENDANT'S MOTION TO DISMISS COUNTS I, II, AND III
OF PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE
PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES**

COMES NOW, Defendant, Robin R. Weiner, Esq., by and through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12, and hereby files this Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint,[1] and, in support thereof, states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.**     **The Above-Captioned Case**

This action involves claims against Robin R. Weiner, Esq. and other named Defendants for alleged violation of the SCRA and other federal statutes (Count I of the Complaint), negligent infliction of emotional distress (Count II of the Complaint), intentional infliction of emotional distress (Count III of the Complaint), fraud (Count IV of the Complaint), willful violation and disregard of U.S. Bankruptcy laws (Count V of the Complaint), breaking and entering/illegal seizure/invasion of privacy/willful violation of constitutional rights (Count VI of the Complaint), willful violation and disregard of RESPA and TILA (Count VII of the Complaint), and conversion (Count VIII of the Complaint), arising out of Plaintiff's prior bankruptcy case and a Co-Defendant's mortgage foreclosure and related sale of his home.

---

[1] The remaining five counts of the Complaint are not directed toward Ms. Weiner. Notwithstanding same, to the extent that it is determined that a response to such causes of action is required, and to the extent otherwise applicable to Plaintiff's allegations throughout the Complaint, the Trustee joins in the arguments advanced by Emigrant Mortgage Company, Inc. and Becker & Poliakoff, P.A., in their Motion to Dismiss the Complaint, incorporating same as if fully stated herein.

Case No. 9:16-cv-80870 ZLOCH/HUNT

Joseph Worrell ("Plaintiff") filed for Chapter 13 bankruptcy in March of 2009. *See,* Complt. ¶¶6, 41. Robin R. Weiner, appointed by the United States Trustee, is the standing Chapter 13 Trustee for the Southern District of Florida, Fort Lauderdale and Palm Beach Divisions, responsible for administering Chapter 13 cases. *Id., generally* at ¶44. Ms. Weiner has served as the standing Chapter 13 Trustee for 23 years and has administrated over 80,000 cases. On May 31, 2016, Plaintiff filed a Complaint against Robin R. Weiner (hereinafter "the Trustee"), Emigrant Mortgage Company, Inc., Becker & Poliakoff, P.A., and Alan Fisher, P.A., which was served upon the Trustee on June 30, 2016.[2] With regard to the allegations against the Trustee, the Complaint states that Plaintiff filed for bankruptcy on March 26, 2009, and the Trustee was appointed to bear responsibility for his estate. *See,* Complt. ¶¶ 6, 41, 44. Plaintiff claims that Emigrant Mortgage Company, Inc. (hereinafter "Emigrant") subsequently filed claims against the estate and sold his home at foreclosure sale(s). *Id.* at ¶¶ 6, 8, 46, 49. Plaintiff alleges that the Trustee should have opposed or avoided Emigrant's claim and compelled Emigrant to cancel its alleged foreclosure sales on March 30, 2009 and August 31, 2009. *Id.* at ¶¶ 6, 8, 46, 54, 59, 61. Plaintiff further claims that the Trustee wrongfully had his case dismissed twice by misrepresenting that he had failed to make payments under his Plan for the benefit of creditors. *Id.* at ¶¶ 47, 63, 64, 88. Based on such allegations, Plaintiff maintains that the Trustee violated the SCRA and other federal statutes, and negligently and intentionally inflicted emotional distress upon him.

**B.   Plaintiff's Underlying Bankruptcy Case**

Defendant provides the following summary and history of Plaintiff's underlying bankruptcy case.[3] On March 26, 2009, Plaintiff filed a second Chapter 13 Voluntary Petition, Pro Se, regarding

---

[2] This Court granted the Trustee's Unopposed Motion for Enlargement of Time to Respond to the Complaint, providing the Trustee with an extension through August 1, 2016 to file her Response. *See,* D.E. 36.

[3] Defendant respectfully requests that this Court take judicial notice of the court filings and hearing transcripts in Plaintiff's bankruptcy case. The Eleventh Circuit has held that when considering a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to dismiss to a motion for summary judgment. This is because such documents are capable of accurate and ready determination. *Makro Capital of America, Inc. v. UBS AG,* 372 F.Supp.2d 623, 627 (S.D.Fla.2005) (citing *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1279–80 (11th Cir.1999)); *see also Universal Express, Inc. v. SEC,* No. 05–13142, 2006 WL 1004381, at * 1–2 (11th Cir.2006). Thus, the Court may take judicial notice of documents filed in other judicial proceedings, because they are public documents, without converting the motions to dismiss filed herein to motions for summary judgment, *see Universal Express,* 2006 WL 1004381, at * 2. Additionally, when ruling on a motion to dismiss, the court may consider a document outside the face of the complaint (and the documents attached thereto) if the plaintiff refers to the document in his complaint, the document is central to a claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1285 (11th Cir. 2007). In this regard, documents from Plaintiff's bankruptcy case can be considered by this Court in reaching its determination because Plaintiff's Complaint refers to such bankruptcy case, its documents, and the Trustee's alleged testimony at

Case No. 9:16-cv-80870 ZLOCH/HUNT

the same property.  *See,* Exhibit A, attached hereto.  The deadline to file a Chapter 13 Plan, Schedules A-J, Statement of Financial Affairs, Payment Advices and Statement of Current Monthly Income and Disposable Income Calculation was April 10, 2009.  *See,* Exhibit B, attached hereto. On said date, Plaintiff filed a Notice of Supplementing Filing, and Notice of 50 U.S.C. § 501 Application, the latter of which sought a stay under the Servicemembers' Civil Relief Act ("SCRA") until his pre-deployment military obligations were completed after May 30, 2009.  *See,* Exhibit C, attached hereto.  The Court construed the Notice of Supplementing Filing as a Motion to Extend Deadline to File Plan and Schedules, and the Notice of 50 U.S.C. § 501 Application as an Application for Stay of Proceedings pursuant to 11 § U.S.C. 522.  *See,* Exhibit D, attached hereto. The Court granted the Motion for Extension, extending the deadline to May 7, 2009.  *Id.*  The Court denied the Application for Stay of Proceedings because it did not comply with the requirements to obtain a stay under the SCRA.  *Id.*

On May 7, 2009, Plaintiff filed a Chapter 13 Plan, Schedules A-J, Statement of Financial Affairs, Payment Advices and Statement of Current Monthly Income and Disposable Income Calculation.  *See,* Exhibit E, attached hereto.  Plaintiff's Chapter 13 Plan included monthly payments in the amount of $1,500.00 to Emigrant Mortgage Company for the first eighteen months, and payments in the amount of $2000.00 for the following 18 months.  *Id.*  The Trustee noted several deficiencies in the Plan and Schedules that would need to be addressed.  Despite filing a proposed Chapter 13 Plan, Plaintiff failed to make the first two required monthly payments under the (pre-confirmation) Plan due on April 26, 2009 and May 26, 2009.  *See,* Exhibit F, attached hereto.  The Meeting of Creditors pursuant to 11 U.S.C. § 341 (hereinafter "Meeting of Creditors") was set for June 22, 2009, at which Plaintiff failed to appear.  *See,* Exhibit G, attached hereto.  On July 1, 2009, the Court entered an Order Dismissing Case for Failure to Make Pre-Confirmation Plan Payments and for Failure to Appear at the Meeting of Creditors.  *See,* Exhibit H, attached.

On August 12, 2009, Plaintiff filed a Motion to Stay Proceedings and Motion to Vacate the Dismissal.  *See,* Exhibits I and J, attached hereto.  Plaintiff was represented by counsel at the hearing on the Motions.  *See,* Exhibits K and L, attached hereto.  However, no other party or counsel was present at the hearing because Plaintiff's counsel failed to provide notice of the hearing.  *See,* Exhibit L.  Regardless, the Court found that the requirements of section 522 were satisfied this time and a stay was thus warranted.  *See,* Exhibits K and L, attached hereto.  The

---

hearings in connection with it; the above-captioned lawsuit is squarely based on Plaintiff's bankruptcy case, which is central to his claim; and the bankruptcy case documents are attached hereto.

Case No. 9:16-cv-80870 ZLOCH/HUNT

resulting Order, entered on September 1, 2009, provided that pursuant to the SCRA, all proceedings in the case were stayed until April 30, 2010 (the date by which Plaintiff's counsel, Nelson A. Hunter (hereinafter "Hunter"), retained for the sole purpose of the hearing, stated Plaintiff would have returned from his deployment).  *Id.*  The Court set the Confirmation Hearing for August 13, 2010 and Meeting of Creditors for June 28, 2010.  *See,* Exhibit M, attached hereto.

On October 30, 2009, Emigrant filed a Motion to Allow Proof of Claim as Timely Filed, attaching the proposed Proof of Claim in the amount of $623,955.05 for a recorded note and mortgage; foreclosure judgment, which was set for hearing on May 14, 2010.  *See,* Exhibits N and O, attached hereto.  Said proposed Proof of Claim attached a Final Summary Judgment of Foreclosure and Award of Attorney's Fees and Costs, awarding Emigrant the subject amount.  *See,* Exhibit M.  On May 14, 2010, Emigrant Mortgage Company, Inc.'s Motion was granted and its Proof of Claim was filed.  The Trustee reviewed the Proof of Claim with attached state court judgment, found it to be valid on its face and found no basis to object to the claim.

Plaintiff's attorney filed a Motion to Withdraw as Counsel, which was granted at the August 13, 2010 Hearing, and reduced to an Order submitted by Hunter on August 17, 2010.  *See,* Exhibit P, attached hereto.  Plaintiff indicated at the hearing that he had been speaking to another attorney (Kenneth Noble) about his case; however, said attorney was not present.  *See,* Exhibit Q, pgs. 5-7, attached hereto.  To accommodate the Plaintiff in deference to his service and contrary to standard procedures, the Trustee recommended continuing the Confirmation Hearing and the Meeting of the Creditors, despite the fact that Plaintiff was delinquent in several of his Plan payments that had come due. *Id* at pgs. 5, 7-8*;* Exhibit F.[4]  The Trustee reminded Plaintiff that he needed to catch up on his payments, as she was unable to further continue the matter if he was delinquent.  *See,* Exhibit Q, 8:6-13.  In this regard, the Confirmation Hearing was continued to September 10, 2010, and the Meeting of Creditors was continued to September 23, 2010.  *See,* Exhibit R, attached hereto.  On August 25, 2010, the Trustee filed an Objection to Plaintiff's Claim of Exemptions, which was set to be heard at the September 10, 2010 hearing.  *See,* Exhibit S, attached hereto.

At the September 10, 2010 Confirmation Hearing, Plaintiff stated that he recently returned from deployment and had been in contact with yet another attorney, Alan Fisher (hereinafter "Fisher"), who was not present at the hearing and had not entered a notice of appearance, submitted any documents to the Trustee or filed any amended schedules or plan.  Again, the Trustee

---

[4] Plaintiff had failed to make monthly payments for six months, namely, April, May, and July of 2009, and May, June, and July of 2010.  *Id.*

Case No. 9:16-cv-80870 ZLOCH/HUNT

recommended continuing the Confirmation Hearing (and hearing on her Objection) to October 8, 2010. *See,* Exhibit T, attached hereto. At the October 8, 2010 hearing, Fisher appeared on Plaintiff's behalf and requested, an additional continuance to review the documents he had received from Plaintiff and to contact the Trustee's Office directly to ensure that all of the deficiencies could be addressed. *See,* Exhibit U, attached hereto. Based upon Fisher's proffer, and in deference to Plaintiff's service, the Trustee recommended yet another continuance, resulting with the Confirmation Hearing (and Objections to Exemptions) being reset to November 12, 2010. *See,* Exhibit V, attached hereto. The Trustee made such recommendation, despite the facts that the case was a year and a half old, nearly six months had elapsed since the stay due to military service expired, and Plaintiff had yet to become current under his proposed Plan.[5]

Plaintiff failed to provide Fisher with the necessary documents to provide to the Trustee or otherwise resolve the deficiencies. *See,* Exhibit W, attached hereto. Thus, as of the November 12, 2010 Confirmation date (19 months since the filing of the case), no documents were submitted to the Trustee and no amended schedules or plan were filed. *Id.* Plaintiff also had not become current under the proposed Plan payments to the detriment of the creditors.[6] The Trustee provided an update to the Court, and made an unusual request for a dismissal of the case without prejudice (contrary to the Court's standard procedure of dismissal with prejudice for 6 months) for the immediate filing of a new Chapter 13 case to begin again, as an accommodation to the Plaintiff and deference to his service. *See,* Exhibit W. The Court accepted the Trustee's request and stated that "what the Trustee has suggested is actually very friendly to the Debtor, and that is, let him start over again," and Plaintiff's counsel stated that he would be happy with such course of action. *Id,* lines 22-25. On November 19, 2010, the Court entered an Order Denying Confirmation and Dismissing Chapter 13 Case, without prejudice, thus allowing Plaintiff to file a new case. *See,* Exhibit X, attached hereto. However, Plaintiff did not file a new case.[7] The Trustee's Final Report and Account of the administration of the estate was filed on September 30, 2011, and the Court entered an Order Discharging Trustee on the same day. *See,* Exhibit Z, attached hereto.

On November 18, 2015, five years after the filing of the Plaintiff's case, Plaintiff filed a Motion to Reopen Chapter 13 Case and for Adversary Proceedings. *See,* Exhibit AA, attached

---

[5] Plaintiff had failed to make monthly payments for seven months, namely, April, May, and July of 2009, and May, June, July, and August of 2010. *See,* Exhibit F.
[6] Plaintiff had failed to make monthly payments for eight months, namely, April, May, and July of 2009, and May, June, July, August, and October of 2010. *See,* Exhibit F.
[7] Instead, Plaintiff filed a Motion to Reinstate Case and Motion for Stay of Proceedings, and a subsequent Motion to Reopen Chapter 13 Proceedings, both of which were denied. *See,* Exhibit Y, attached hereto.

Case No. 9:16-cv-80870 ZLOCH/HUNT

hereto.  The Court denied the Motion to Reopen and granted the Motion to file an adversary proceeding, entering an Order stating that the case is "reopened solely so that the Debtor may file . . . an appropriate pleading seeking relief against creditor Emigrant Mortgage Company for alleged violation of the automatic stay."  *See,* Exhibit BB, attached hereto.  On January 17, 2016, Plaintiff filed an Adversary Complaint against Emigrant Mortgage Company, alleging that it violated the stay by selling his home.  *See,* Exhibit CC, attached hereto.  On April 12, 2016, the court dismissed the Adversary Complaint, stating that neither an automatic stay nor a SCRA stay was in effect on August 31, 2009, the date of the foreclosure sale.  *See,* Exhibit DD, attached hereto.

## SUMMARY OF THE ARGUMENT

Counts I, II, and III of Plaintiff's Complaint should be dismissed for the following eight reasons: (1) this Court lacks jurisdiction over the claims against the Trustee, (2) Plaintiff's claims are barred by the qualified judicial immunity privilege, (3) Plaintiff lacks standing to maintain the subject action against the Trustee, (4) Plaintiff's claims are barred by the statute of limitations, (5) Count I of Plaintiff's Complaint for violation of the SCRA and other statutes fails to state a cause of action for which relief may be granted, (6) Count II of Plaintiff's Complaint for negligent infliction of emotional distress is barred by the impact rule, (7) Count III of Plaintiff's Complaint for intentional infliction of emotional distress fails to state a cause of action for which relief may be granted, and (8) the portions of Counts I, II, and III of Plaintiff's Complaint regarding dismissal of his bankruptcy case are facially deficient.  Additionally, Plaintiff's claim for punitive damages should be stricken because the pleading fails to make the requisite showing of intentional misconduct or gross negligence.

## LEGAL STANDARD GOVERNING A MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hirshon v. King & Spotting,* 467 U.S. 69, 73 (1984); *See also, Hazel v. Schl. Bd. of Dade County*, 7 F.Supp.2d 1349, 1352 (S.D. Fla. 1998) (holding that a motion to dismiss will be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief"); *Mallo v. Public Health Trust of Dade Cty*, 88 F.Supp. 1376 (S.D. Fla. 2000).  A motion to dismiss for failure to state a claim tests the sufficiency of the complaint.  *Hazel,* 7 F.Supp.2d 1349.  Importantly, a complaint must allege facts properly setting forth the essential elements of a cause of action.  *Hazel*, 734 F.Supp.2d at 1352.  In making a determination relative to the sufficiency of the Complaint, the Court may not consider documents

Case No. 9:16-cv-80870 ZLOCH/HUNT

outside the pleadings on Rule 12(b)(6) motions. *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999). Dismissal of a complaint is appropriate on the basis of a dispositive issue of law or when there is no necessity to construe factual allegations contained within the complaint. *Marshall Cty Bd. of Ed. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171 (11th Cir. 1993).  If the defendant demonstrates beyond doubt that the plaintiff can prove no set of facts to support his claim, then a motion to dismiss should be granted. *Mallo,* 88 F.Supp. 1376.

## MEMORANDUM OF LAW

**A.      This Court Lacks Jurisdiction Over the Claims Against the Trustee**

The law is clear that absent the permission of the appointing Bankruptcy Court, other courts lack subject matter jurisdiction to hear lawsuits filed against the bankruptcy trustee.  *In Re: W.B. Care Center, LLC,* 497 B.R. 604, 611 (Bankr. S.D. Fla. 2013); *Lawrence v. Goldberg,* 2008 U.S. Dist. Lexis 124906 at *29 (S.D. Fla. 2008).   Restated, leave of the appointing court must be obtained before an action can be brought against the trustee.  *One South Ocean Drive 2000 LTD v. One Ocean Boca, LLC,* 182 So 3d 872, 874 (Fla. 4th Dist. App. 2016); *Carter v. Rodgers,* 220 F.3d 1249 (11th Cir. 2000); *Lawrence v. Goldberg,* 2008 U.S. Dist. Lexis 124906 at *28-29 (S.D. Fla. 2008).  To obtain authorization to file suit, the requesting party must demonstrate a prima facie case of liability.  *One South Ocean Drive 2000 LTD,* 182 So.3d at 874.   There are various rationales of such rule, known as "the *Barton* Doctrine.  For example,

> If dissatisfied parties in bankruptcy proceedings can freely sue the trustee in another court for discretionary decisions made while administering the estate, that court would have the practical power to turn bankruptcy losers into bankruptcy winners and vice versa.

*In re Ridley Owens, Inc.,* 391 B.R. 867, 871 (Bankr. N.D. Fla. 2008). The doctrine also incorporates protections for the job of trustee by preventing the creation of disincentives for performing a trustee's necessary duties and keeping the trustee from being burdened with defending against unnecessary or frivolous litigation in distant forums.  *Id.*  In this regard, the Eleventh Circuit stated:

> If [the trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded. . . . Without the requirement [of leave], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive. . . . Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively.

*Carter v. Rodgers*, 220 F.3d 1249, 1252-1253 (11th Cir. 2000).

Case No. 9:16-cv-80870 ZLOCH/HUNT

The *Barton* Doctrine applies even after a bankruptcy case is closed, the trustee no longer has possession of the debtor's assets, and the trustee has been discharged. *Id.; In Re: W.B. Care Center, LLC,* 497 B.R. at 611. In this regard, courts have reasoned that even where the administration of the estate is complete, a trustee may subsequently be held liable for a potential breach of fiduciary duty while administering the estate. *One South Ocean Drive 2000 LTD,* 182 So.3d at 875. The scope of the *Barton* Doctrine is extremely broad. *In Re: W.B. Care Center, LLC,* 497 B.R. at 611. The doctrine applies even if a suit seems unrelated to the bankruptcy proceeding because the Bankruptcy Court has jurisdiction to hear "any or all cases under title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under title 11." *Id.*

The application of the above *Barton* rule principles to the above-captioned case leads to the inescapable conclusion that the Trustee cannot be sued in this action without the prior consent of the Bankruptcy Court. *In Re: W.B. Care Center, LLC,* 497 B.R. at 611*, generally.* Plaintiff has not, and cannot, allege that such consent was requested or provided, as such did not occur. Such result is in accordance with the above-described purposes of the *Barton* doctrine. For example, said result protects the Trustee from being burdened with defending against the subject unnecessary and frivolous lawsuit. Additionally, said result operates to prevent this Court from turning the subject bankruptcy winner (Co-Defendant Emigrant Mortgage) into a bankruptcy loser. In this regard, Defendant notes that Plaintiff's Complaint requests this Court to declare the mortgage instruments, property lien, and foreclosure sale, void. *Complt.* Section XIV ¶ 2-3. Plaintiff will be unable to obtain the requisite consent to sue the Trustee in the subject forum because Plaintiff cannot establish a prima facie case of liability, for the reasons discussed in sections B through H below.

**B.      Plaintiff's Claims are Barred by the Qualified Judicial Immunity Privilege**

As a general rule, bankruptcy trustees are entitled to qualified judicial immunity for acts taken within their authority as officers of the court. *Barbee v. Price Waterhouse, LLP,* 255 B.R. 801, 803 (Bankr. S.D. Fla. 2000); *NOB Holdings Corp. v. Liberty Mut. Ins. Co.,* 426 B.R. 916, 921 (Bankr. S.D. Fla. 2010). A bankruptcy trustee has absolute quasi-judicial immunity from damages, which is derived from the judge who appointed him. *Barbee,* 255 B.R. at 804.[8] The only exception

---

[8] The basis for the rule has been explained as follow:

   Allowing the trustee to be held liable in her personal capacity for decisions made in the course of administering the estate would-discourage qualified and capable people from undertaking the duties of a... trustee. Carter, 220 F.3d at 1252-53. Trustees that are subject to malpractice suits by unhappy creditors would "have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive.

In re Ridley Owens, Inc., 391 B.R. 867, 872 (Bankr. N.D. Fla. 2008)

to such rule applies when a trustee commits willful, deliberate acts of misconduct (with the intent to cause harm) or gross negligence (defined as an act or omission that a reasonable prudent person would know is likely to result in injury to another), that exceed the scope of his authority, or are ultra vires. *Id.* at 803; *NOB Holdings Corp.,* 426 B.R. at 921 (Bankr. S.D. Fla. 2010). In such cases, a bankruptcy trustee may be sued in his individual capacity for said acts. *Id.* Courts have held that trustees' actions that are sloppy, negligent, careless, based on mistaken belief, and even stupid, and in bad faith, do not rise to the level necessary to satisfy the above standard. *Id.* Importantly, a trustee is granted certain discretion in the administration of a bankruptcy estate, and the trustee is not liable in any manner for mistakes in judgment where discretion is allowed. *Id.*

It follows from the above that the Trustee is entitled to qualified judicial immunity for the acts she took within her authority as an officer of the court in connection with Plaintiff's bankruptcy case. It is evident that the exception to the general rule of absolute quasi-judicial immunity from damages is inapplicable to the case at bar due to a lack of a single willful, deliberate act of misconduct (with the intent to cause harm) or gross negligence on the Trustee's part that exceeded the scope of her authority. In this regard, the acts (or lack thereof) that Plaintiff takes issue with do not rise to the level necessary to satisfy the above standard. Specifically, Plaintiff claims that the Trustee (1) wrongfully had his case dismissed twice (by misrepresenting that he had failed to make payment) when he was deployed and unable to adequately defend himself and (2) should have opposed or avoided Emigrant's claim and compelled Emigrant to cancel its foreclosure sales in 2009. *See,* Complt. ¶¶ 6, 8, 46, 54, 59, 61, 47, 63, 64, 88.

With regard to the former, as discussed above, the Trustee sought initial dismissal of Plaintiff's bankruptcy case due to his failure to make the first two required monthly payments under the (pre-confirmation) Plan, namely, April and May, and failure to appear at the Meeting of Creditors which was set for June 22, 2009. *See,* Exhibits F, G, and H. It is noteworthy that no SCRA stay had been entered or was otherwise in effect at the time, and the stay that Plaintiff himself had requested (which the court denied) continued only until May 30, 2009, which was prior to, and would have lapsed by, the date of the dismissal, namely, July 1, 2009. *See,* Exhibits C, D, and H. Further, as reflected by the Court's Order Dismissing Case for Failure to Make Pre-Confirmation Plan Payments and for Failure to Appear at the Meeting of Creditors, the Court agreed with the Trustee that dismissal was appropriate. *See,* Exhibit H. Accordingly, it is clear that the Trustee's actions in connection with the dismissal not only failed to constitute a willful act of misconduct or gross negligence, but was lawful, proper, and warranted. It is also emphasized that it

Case No. 9:16-cv-80870 ZLOCH/HUNT

was the Court, not the Trustee, that dismissed Plaintiff's case.  Thus, the action that Plaintiff takes issue with was not even taken by the Trustee, further precluding liability of the Trustee. The Trustee merely made a recommendation to the Court, in accordance with her duties as Trustee.

As to the subsequent dismissal entered on November 19, 2010, such was the result of Plaintiff's repeated failure to provide the Trustee with the necessary documents or otherwise resolve the deficiencies, and Plaintiff's remaining delinquent in payments,[9] by month 19 of his bankruptcy case.  Indeed, Fisher stated at the November 12, 2010 hearing in which the Trustee sought dismissal, "We've asked him for documents, so that we could properly represent him.  Truthfully, he hasn't gotten us everything, not nearly close to everything that we would need to properly represent him . . . he's not doing that which is necessary to help himself."  *See,* Exhibit W, lines 12-21.  It must be emphasized that Plaintiff was represented by counsel at such hearing, rendering his alleged deployment irrelevant.  Significantly, rather than follow the standard practice and request a dismissal with prejudice for 6 months, the Trustee requested a dismissal of the case *without prejudice* to the filing of a new case, in a clear attempt to give Plaintiff another bite at the apple. The Court even stated that "what the Trustee has suggested is actually very friendly to the Debtor, and that is, let him start over again," and Plaintiff's counsel stated that he would be happy with such course of action.  *Id,* lines 22-25.  Further, as reflected by the Court's Order Denying Confirmation and Dismissing Chapter 13 Case, without prejudice, the Court agreed with the Trustee that dismissal was appropriate.  *See,* Exhibit X.  It follows from the above that it is clear that the Trustee's actions in connection with the dismissal not only failed to constitute a willful act of misconduct or gross negligence, but was lawful, proper, warranted, and "friendly" to the debtor.[10] It is also emphasized that it was the Court, as opposed to the Trustee, that dismissed Plaintiff's case. Thus, the action that Plaintiff takes issue with was not even taken by the Trustee, further precluding her liability.

With regard to the latter, the Trustee's failure to oppose or avoid Emigrant's claim and failure to compel Emigrant to cancel its foreclosure sales, Emigrant Mortgage Company, Inc. filed a Proof of Claim in the amount of $623,955.05 for a recorded note and mortgage.  *See,* Exhibit N. Such Proof of Claim was facially valid by the Final Summary Judgment of Foreclosure and Award

---

[9] Plaintiff had failed to make monthly payments for eight months, namely, April, May, and July of 2009, and May, June, July, August, and October of 2010.  *See,* Exhibit F.

[10] Defendant notes that Plaintiff haphazardly alleges that Ms. Weiner conspired with Mr. Fisher to get his bankruptcy case dismissed.  Plaintiff's Complaint is devoid of a single factual allegation in support of such a conclusory allegation, and it is clear from the above that there existed no conspiracy.

Case No. 9:16-cv-80870 ZLOCH/HUNT

of Attorney's Fees and Costs (awarding Emigrant the $623,955.05 amount and scheduling a foreclosure sale for the subject property), which was attached to the Proof of Claim. *Id.* The bankruptcy court is bound by state court judgments, so any objection to the Proof of Claim by the Trustee would have been improper and futile. More specifically, an objection by the Trustee would, in essence, seek a reversal or voidance of the state court's ruling, which would not be possible under the law. Specifically, pursuant to the *Rooker-Feldman* doctrine, a federal court lacks subject matter jurisdiction in a claim where "the relief requested ... requires determining that the state court's decision is wrong or ... [requires voiding] the state court's ruling." *Sarhan v. Rothenberg,* 2008 WL 2474645 (S.D. Fla. 2008) (citing *Industrial Communications and Electronics, Inc. v. Monroe,* 134 Fed. Appx. 314, 317 (11th Cir. 2005)). Restated, the *Rooker–Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced. *Lance v. Dennis,* 126 S.Ct. 1198 (2006). The Supreme Court has repeatedly reinforced this narrow but important limitation on a federal district court's power, holding that a lawsuit that essentially invites a federal district court to review and reverse an unfavorable state court judgment is properly dismissed for want of subject matter jurisdiction. *Sarhan v. Rothenberg,* 2008 WL 2474645 (S.D. Fla. 2008) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283-84 (2005)). Accordingly, the pivotal inquiry in determining the applicability of *Rooker-Feldman* is "whether the relief requested of the federal court would effectively reverse or void the state court's ruling." *Bosdorf v. Beach,* 79 F.Supp.2d 1337, 1339 (S.D. Fla. 1999); *Sarhan v. Rothenberg,* 2008 WL 2474645 (S.D. Fla. 2008). Moreover, with regard to Plaintiff's claim that the Trustee should have compelled Emigrant to cancel its foreclosure sales, in addition to such contention being misplaced for the reasons stated immediately above, the Trustee lacked the power to do that regardless. Further, even if the Trustee possessed such power, it would not have been exercised because there would be no benefit to the estate or its creditors, being that the subject property was homestead and therefore exempt from Plaintiff's estate. It is noteworthy that Plaintiff appealed the foreclosure matter (specifically the Certificate of Title issued to Emigrant Mortgage resulting from the Final Summary Judgment of Foreclosure) to the Fourth District Court of Appeal, which affirmed the Circuit Court's decision, and to the Florida Supreme Court, which denied Plaintiff's Petition. *See,* Exhibit EE, attached hereto. Finally, Defendant points out that Plaintiff provided for Emigrant's mortgage in his Plan, was making payments to Emigrant under the Plan, and never objected to its Proof of Claim. *See,* Exhibits E and F. It follows from the above that it is clear that the Trustee's action in

Case No. 9:16-cv-80870 ZLOCH/HUNT

connection with Emigrant's proofs of claim not only failed to constitute a willful act of misconduct or gross negligence, but was lawful, proper, and warranted.

Even if it were to be determined that the Trustee was mistaken about Plaintiff's lack of payments and Emigrant's mortgage documents/Final Judgment of Foreclosure, made a mistake in judgment, or was otherwise negligent (which would be the worst case scenario in light of the above facts), same would still fail to shatter the qualified judicial immunity. As stated above, trustees' actions that are negligent, careless, and based on mistaken belief, do not rise to the level necessary to satisfy the above standard, and a trustee is not liable in any manner for mistakes in judgment where discretion is allowed.

It follows from the above that Plaintiff's claims against the Trustee must be dismissed.

**C.     Plaintiff Lacks Standing to Maintain the Subject Action Against the Trustee**

Pursuant to Fed. R. Civ. P. 12(b)(1), the party invoking the court's jurisdiction bears the burden in proving that subject matter jurisdiction exists. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L. Ed. 951 (1942). This principle applies to a jurisdictional challenge based on lack of standing as well as other challenges to subject matter jurisdiction. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103-104, 118 S.Ct. 1003, 140 L.Ed. 2d 210 (1998). Before a party may seek judicial relief, he must have standing to maintain the action. *Rogers & Ford Constr. Corp. v. Carlandia Corp.,* 626 So.2d 1350, 1352 (Fla. 1993) (citations omitted). The Florida Supreme Court has described standing as follows:

> Generally, one with a legally protectable right or interest at stake in an otherwise justiciable controversy is a proper party to obtain resolution of that controversy. The party with the right or interest at stake generally should also be a "real party in interest," that is, "the person in whom rests, by substantive law, the claim sought to be enforced.

*Rogers & Ford Constr. Corp.,* 626 So.2d 1350, 1352 (citations omitted). It is well established that standing is an issue that the Court must decide, regardless of whether the particular standing issue involves a question of fact or law. *See, e.g. Land v. Dollar*, 330 U.S. 731, 735, 67 S.Ct. 1009, 1010, 91 L.Ed. 1209, 1214 (1947). Further, standing cannot be inferred from the averments of the pleadings, but "must affirmatively appear in the record." *Grace v. American Cent. Ins. Co.,* 109 U.S. 278, 284 (1883); *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382 (1884)). The requirement that a litigant must have standing to bring a lawsuit in a federal court is derived from the case or controversy requirement. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). A federal court's jurisdiction therefore can only be invoked when the plaintiff itself has suffered "some

Case No. 9:16-cv-80870 ZLOCH/HUNT

threatened or actual injury resulting from the putatively illegal action." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Lack of standing is a basis for dismissal of the complaint if it is established and should be asserted by a motion to dismiss." *Ackerman v. Ackerman,* 247 B.R. 336 (M.D. Fla. 2000). Plaintiff fails to demonstrate that he has standing to pursue the subject lawsuit, and will be unable to do so.

Plaintiff's claims are grounded in the Trustee's alleged breach of duties allegedly owed to him. Specifically, Plaintiff claims that the Trustee had a duty to verify or oppose/avoid Emigrant's mortgage foreclosure claim and compel Emigrant to cancel its foreclosure sale, and to maintain his bankruptcy case. *See,* Complt. ¶¶ 7, 46, 47, 53, 54, 59, 61, 63. Plaintiff claims that the Trustee breached such duties by failing to take the subject actions as to Emigrant's claim and sale, and having his bankruptcy case dismissed. *Id.* Significantly however, the Trustee owed no duty to Plaintiff. Instead, her duty was to Plaintiff's creditors and the estate. *See,* 11 U.S.C. §1302. As the bankruptcy court specifically stated to Plaintiff in connection with his prior adversary case, "[The Trustee] would do nothing unless she thought something could be obtained for your creditors. Not to help you personally, for your creditors. Her duty is to your creditors. Not to you." *See,* Exhibit FF, 6:23-25, 7:1-2, attached hereto. A Chapter 13 Trustee serves the limited administrative function of ensuring that debtor's plan meets the standards for confirmation, objecting to claims, and paying approved claims according to the confirmed plan. *In Re Bequette,* 184 B.R. 327 (Bankr. S.D. Ill. 1995) (citing 11 USC 1302). It is also a Trustee's responsibility to ensure that the debtor makes timely payments under section 1326. 11 U.S.C. § 1302. Noticeably devoid from such duties is a duty to the debtor. Similarly, the case law provides that a bankruptcy trustee is personally liable for breach of a duty to the estate or to creditors of the estate. *Barbee v. Price Waterhouse, LLP (In re Solar Fin. Servs*.), 255 B.R. 801, 804 (Bankr. S.D. Fla. 2000). Noticeably devoid from such legal proposition is a reference to the debtor.

The above-discussion evidences a lack of standing on Plaintiff's part to maintain the subject lawsuit against the Trustee, and necessitates dismissal of Counts I, II, and III of Plaintiff's Complaint against her. Even if Plaintiff had been able to demonstrate the requisite standing to prosecute a cause of action against the Trustee, and his claims were not otherwise barred for the reasons discussed in sections A and B above, Plaintiff's claims would still fail. In this regard, the following discussions provide additional grounds for the necessity of dismissal of same.

Case No. 9:16-cv-80870 ZLOCH/HUNT

**D.     Plaintiff's Claims are Barred by the Statute of Limitations**

Each of Plaintiff's causes of action against the Trustee is time-barred.  Plaintiff claims that the Trustee violated the SCRA and other federal statutes, negligently inflicted emotional distress upon him, and intentionally inflicted emotional distress upon him, by having his bankruptcy case dismissed twice, and failing to oppose or avoid Emigrant's mortgage foreclosure claim and failing to compel Emigrant to cancel its foreclosure sale(s) in 2009.  *See,* Complt., *generally.*  Plaintiff's bankruptcy case was initially dismissed on July 1, 2009, and was subsequently dismissed on November 19, 2010.  *See,* Exhibits H and X.  The foreclosure sales Plaintiff takes issue with allegedly occurred on March 30, 2009 and August 31, 2009.  *See,* Complt. ¶¶ 6, 8.

Actions founded on a statutory liability, actions founded on negligence, and actions for intentional torts must be commenced within four (4) years.  *See,* Fla. Stat. § 95.11(3).  Accordingly, the four year statute of limitations began to run on the above dates, and expired between March 30, 2013 and November 19, 2014.  However, Plaintiff failed to file his lawsuit against the Trustee until late May of 2016, between one and a half and three years after the applicable statute of limitations had lapsed.  As such, Plaintiff's causes of action are time barred due to their not having been filed within the four year statute of limitations applicable to the subject claims, and thus, should be dismissed.  Indeed, a motion to dismiss based upon the statute of limitations is appropriate when the grounds for its application are apparent in the Complaint.  *Elmore v. Florida Power & Light Co.*, 760 So.2d 968, 971 (Fla. 4th Dist App. 2000); *Hanano v. Petrou*, 783 So.2d 637, 638.

**E.     Count I of Plaintiff's Complaint for Violation of Federal Statutes Fails to State a Cause of Action for Which Relief May be Granted.**

In Count I, Plaintiff claims that the Trustee (1) violated 32 U.S.C. §505, and 11 U.S.C. §§ 362 and 349, and (2) violated his rights and protections by getting his bankruptcy case dismissed when he was deployed from Florida and unable to adequately defend himself. *See,* Complt. ¶80, 88.

With regard to the former contention, Plaintiff fails to identify a single act taken by the Trustee that constituted a violation of such Act or statutes, let alone allege how such mystery acts equated to violations.  Significantly, Count I of Plaintiff's Complaint begins with paragraph 71.  Paragraphs 71-79 advance several allegations of acts claimed to have been taken by Emigrant and Becker & Poliakoff, P.A.  Such paragraphs are devoid of any allegations regarding acts claimed to have been taken by the Trustee.  Paragraph 80 makes the conclusory allegation that Emigrant, and its agent (which Plaintiff claims to be Becker & Poliakoff, P.A.), and the Trustee violated the above-listed statutes.  As stated, Plaintiff does not claim that any of the alleged acts that supposedly

violated the subject statutes were taken by the Trustee.  Instead, Plaintiff claims that each of the alleged acts was taken by Emigrant Mortgage Company or Becker & Poliakoff, P.A.  Plaintiff's failure to advance factual allegations against the Trustee connecting her to the claim renders same subject to dismissal.  *See e.g., Hanley v. The Sports Authority, Inc.,* 1998 U.S. Dist. LEXIS 21081 (S.D. Fla. 1998) (dismissing certain individual defendants based on plaintiff's failure to allege facts with respect to those defendants which would warrant them being individual defendants); *Showers v. City of Bartow,* 978 F.Supp. 1464, 1467 (M.D. Fla. 1997) (dismissing complaint as to individual defendant where plaintiff failed to allege what actions or inactions of the individual connected her to the lawsuit).

Similarly, in order to defeat a motion to dismiss, a plaintiff must do more than merely label a claim. *Medalie v. FSC Sec. Corp.,* 87 F.Supp.2d 1295, 1298 (S.D. Fla. 2000).  Likewise, the pleading standard outlined in Federal Rule of Civil Procedure 8 demands more than an unadorned, "the-defendant-unlawfully-harmed-me" accusation.  *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009).  By contrast, a complaint must allege facts properly setting forth the essential elements of a cause of action.  *Hazel,* 734 F.Supp.2d at 1352.  Indeed, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft,* 129 S. Ct. 1937.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.* In this regard, factual allegations must be enough to raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" on the assumption that all of the allegations in the complaint are true (even if doubtful in fact).  *Id.*

Importantly, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Bell Atlantic Corp.,* 550 U.S. 544, 555.  Indeed, recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Ashcroft,* 129 S. Ct. 1937. Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  *Id.*  Similarly, a complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.*  Further, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation," or unwarranted deductions of fact.  *Bell Atlantic Corp.,* 550 U.S. 544, 555; *South Florida Water Management District,* 84 F.3d

402, 409 n. 10 (11th Cir. 1996). Significantly, in evaluating a Complaint for sufficiency, a court must not assume that the plaintiff can prove facts not alleged or that the defendant violated relevant laws in ways not alleged. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp. S.A.*, 711 F.2d 989, 995 (11th Cir. 1983). A court may not consider inferences which are either not supported by, or inconsistent with, the factual allegations contained in the complaint. *See Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 416 F.3d 1242, 1253 (11th Cir. 2005). It is clear from the above that Plaintiff's claim falls far short of satisfying the general pleading requirements applicable to all lawsuits.

With regard to Plaintiff's latter contention regarding the dismissals (as pled in paragraph 88 of the Complaint), Plaintiff fails to identify a single law constituting a "right" or "protection" that the Trustee violated, let alone how the Trustee's alleged conduct violated the mystery law. It follows from the above law regarding basic pleading requirements that Plaintiff's claim must be dismissed. In any event, both dismissals of Plaintiff's bankruptcy case by the Court, occurring in July of 2009 and November of 2010, were proper and lawful for the reasons outlined in section B above.

It follows that Count I of the Complaint must be dismissed.

**F.     Count II of Plaintiff's Complaint for Negligent Infliction of Emotional Distress is Barred by the Impact Rule.**

In order to recover damages for emotional distress caused by the negligence of another in Florida, the plaintiff must show that the emotional distress flows from physical injuries sustained in an impact. *Elliott v. Elliott*, 58 So.3d 878, 880 (Fla. 1st Dist. App. 2011) (citing *Fla. Dep't of Corr. v. Abril*, 969 So.2d 201, 206 (Fla. 2007)). This requirement is known as the "impact rule," which operates to bar cases in which the plaintiff claims mental or emotional damages but has not sustained any physical impact or contact. *Willis v. Gami Golden Glades, LLC*, 967 So.2d 846, 849 (Fla. 2007). "'[T]he underlying basis for the [impact] rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims.'" *Elliott*, 58 So.3d 878, 880 (citing *Gracey v. Eaker*, 837 So.2d 348, 355 (Fla. 2002)). The exception to the requirement that the plaintiff sustain physical impact applies when the plaintiff suffers from a physical injury as a result of psychological trauma arising from her witnessing/being involved with an event causing the negligent injury to another person who she has a close personal relationship to. *Zell v. Meek,* 665 So.2d 1048, 1049 (Fla. 1995); *Watters v. Walgreen Co.,* 967 So.2d 930, 931 (Fla. 1st Dist. App. 2007). Thus, the application of the "impact rule" reflects a

Case No. 9:16-cv-80870 ZLOCH/HUNT

dichotomy under the law for cases in which the plaintiff is claiming damages for mental pain and anguish, with the prerequisites for recovery for negligent infliction of emotional distress differing depending on whether the plaintiff has or has not suffered a physical impact from an external force. *Willis*, 967 So.2d at 849.   Specifically, if the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself.  *Willis,* 967 So.2d at 849; *Elliott*, 58 So.3d at 880. If, however, the plaintiff has not suffered an impact, the complained-of mental distress must be manifested by a discernable physical injury, the plaintiff must be "involved" in the incident that involved a closely related person by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical injury "within a short time" of the incident.  *Id.*

Plaintiff does not, and cannot, claim that he sustained any impact, let alone that he suffered any physical injuries from same.   Thus, Plaintiff's claim for negligent infliction of emotional distress is barred by Florida's impact rule.   The exception to the impact rule is inapplicable to this case, as Plaintiff does not, and cannot, allege that he suffered from a physical injury as a result of psychological trauma arising from him witnessing/being involved with an event causing the negligent injury to another person who he has a close personal relationship to.  By contrast, Plaintiff merely claims that he suffered emotional distress, including sleeplessness, anxiety, depression, and humiliation, as a result of the Trustee's getting his bankruptcy case dismissed and failing to oppose or avoid Emigrant's mortgage foreclosure claim and sale.  *See,* Complt. ¶¶ 100, 101.  It follows that Plaintiff's claim for negligent infliction of emotional distress fails and must be dismissed.

**G.      Count III of Plaintiff's Complaint for Intentional Infliction of Emotional Distress Fails to State a Cause of Action for Which Relief May be Granted.**

In order to state a cause of action for intentional infliction of emotional distress, a plaintiff must establish that "(1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe."  *Stewart v. Walker,* 5 So.3d 746, 749 (Fla. 4th Dist. App. 2009) (citing *LeGrande v. Emmanuel,* 889 So.2d 991, 994 (Fla. 3d Dist. App. 2004)).

Plaintiff's Complaint makes the conclusory allegation that the Trustee's having his case dismissed and not opposing/avoiding Emigrant's mortgage foreclosure claim and sale constituted

Case No. 9:16-cv-80870 ZLOCH/HUNT

intentional, extreme, vindictive, and outrageous conduct, which caused him severe emotional distress.  *See,* Complt. ¶¶ 102-104.  However, Plaintiff cannot, under any circumstances, satisfy the second requirement of the above-outlined test, namely, that the Trustee's conduct was outrageous. Importantly, Florida law places an extremely high burden on the plaintiff to satisfy the "outrageous" requirement.  Indeed, The Restatement of Torts defines the type of outrageous conduct needed to support the second element of the tort of intentional infliction of emotional distress as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 cmt. d (1965).  In applying such standard, the subjective response of the person who is the target of the actor's conduct does not control the question of whether the tort of intentional infliction of emotional distress occurred.  *Liberty Mutual Ins. Co. v. Steadman*, 968 So.2d 592, 595 (Fla. 2d Dist. App. 2007) (citing *Ponton v. Scarfone*, 468 So.2d 1009, 1011 (Fla. 2d Dist. App. 1985) (quoting *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla. 1985)).  Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is "atrocious, and utterly intolerable in a civilized community."  *Id.*  Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact.  *Id*; *Ponton,* 468 So. 2d at 1011.

Applying the above-referenced standard to the subject case, it is clear that Plaintiff cannot establish the existence of the outrageous conduct required to establish a cause of action for intentional infliction of emotional distress against the Trustee.  Indeed, the Court's dismissals of Plaintiff's bankruptcy case due to Plaintiff having failed to appear at the Meeting of the Creditors, make the requisite plan payments, and provide the necessary documentation/cure the deficiencies, and the Trustee's failing to object to or oppose Emigrant's mortgage foreclosure claim/sale due to Emigrant having obtained a Final Summary Judgment of Foreclosure (which set a foreclosure sale), by no stretch of the imagination constitutes conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Instead, the Trustee's actions, which, as discussed in Section B above were lawful, proper, and warranted, constitute the mere fulfillment of her duties in

Case No. 9:16-cv-80870 ZLOCH/HUNT

connection with her handling of Plaintiff's bankruptcy case. It follows from the above-discussion that Plaintiff cannot establish a claim for intentional infliction of emotional distress under any circumstances. Accordingly, his claim must be dismissed.

**H.      The Portions of Counts I, II, and III of Plaintiff's Complaint Regarding Dismissal of His Bankruptcy Case are Facially Deficient.**

All of Plaintiff's causes of action are grounded, in part, upon the Trustee's recommendation to the Court that the bankruptcy case be dismissed without prejudice to the filing of a new case. As discussed in section B above, both dismissals were lawful, proper, and warranted. However, even if they were not, Plaintiff's claims would still fail because the Trustee's conduct would not have been the cause of Plaintiff's alleged damages. Importantly, it is basic legal precept that to recover damages in law, a plaintiff must show that the defendant violated a duty that resulted in damages to the plaintiff. *NOB Holdings Corp.*, 426 B.R. at 922.

Plaintiff cannot establish that the Trustee's conduct caused Plaintiff's damages. To be sure, the evidence reflects that any damages Plaintiff allegedly suffered from dismissal of his bankruptcy case were caused by his actions or inactions. With regard to the first dismissal, same was due to Plaintiff's failure to make the first two required monthly payments under the (pre-confirmation) Plan, namely, April and May, and failure to appear at the Meeting of Creditors which was set for June 22, 2009. *See,* Exhibits H and F. The second dismissal was due to Plaintiff's repeated failure to provide the Trustee with the necessary documents or otherwise resolve the deficiencies, and Plaintiff's remaining delinquent in payments,[11] by month 19 of his bankruptcy case. Indeed, Plaintiff's counsel stated at the hearing in which the Trustee recommended dismissal, "We've asked him for documents, so that we could properly represent him. Truthfully, he hasn't gotten us everything, not nearly close to everything that we would need to properly represent him . . . he's not doing that which is necessary to help himself." *See,* Exhibit W, lines 12-21. In any event, the Court's dismissal was without prejudice, allowing Plaintiff to re-file the case. *See,* Exhibit X. At the subject court hearing, the Trustee, Fisher, and the Court all specifically discussed and agreed to allowing Plaintiff to start over again. *See,* Exhibit W, lines 22-25. In line therewith, the Order Dismissing Chapter 13 Case stated that the dismissal was without prejudice. *See,* Exhibit X. Despite same, Plaintiff failed to re-file his bankruptcy case. Thus, it cannot be said that "but for" the Trustee's negligence, Plaintiff would not have sustained the damages alleged to have occurred

---

[11] Plaintiff had failed to make monthly payments for eight months, namely, April, May, and July of 2009, and May, June, July, August, and October of 2010. *See,* Exhibit F.

Case No. 9:16-cv-80870 ZLOCH/HUNT

due to his case being dismissed.  To be sure, had Plaintiff re-filed his case, he would not have suffered the claimed damages.  As such, it is abundantly clear that the only breach of duty causing Plaintiff's damages was that committed by Plaintiff alone.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

Plaintiff's Complaint seeks punitive damages as a result of the Trustee's alleged intentional acts.  *See,* pgs. 16, 17, and 24 of Plaintiff's Complaint.  Pursuant to Florida Rule of Civil Procedure 1.190(f) and Florida Statute § 768.72, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages.  *See also, Cypress Aviation, Inc. v. Bollea*, 826 So.2d 1091, 1092 (Fla. 2d Dist. App. 2002) (holding that  a plaintiff is required to provide the court with an evidentiary basis for punitive damages before the court may allow a claim for punitive damages to be included in a plaintiff's complaint).  Specifically, a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was guilty of intentional misconduct or gross negligence.  Fla. Stat. § 768.72.  Plaintiff has failed to follow the above-referenced procedural requirement, as Plaintiff has failed to make the requisite reasonable showing by evidence in the record that Defendant was guilty of intentional misconduct or gross negligence and, thus, entitled to punitive damages. As such, Plaintiff's claim for punitive damages should be stricken.

## CONCLUSION

In conclusion, Counts I, II, and III of Plaintiff's Complaint should be dismissed for several reasons.  First, this Court lacks jurisdiction over the claims against the Trustee.  Second, Plaintiff's claims are barred by the qualified judicial immunity privilege.  Third, Plaintiff lacks standing to maintain the subject action against the Trustee.  Fourth, Plaintiff's claims are barred by the statute of limitations.  Fifth, Count I of Plaintiff's Complaint for violation of the SCRA and other statutes fails to state a cause of action for which relief may be granted.  Sixth, Count II of Plaintiff's Complaint for negligent infliction of emotional distress is barred by the impact rule.  Seventh, Count III of Plaintiff's Complaint for intentional infliction of emotional distress fails to state a cause of action for which relief may be granted.  Eighth, the portions of Counts I, II, and III of Plaintiff's Complaint regarding dismissal of his bankruptcy case are facially deficient.  Finally, Plaintiff's claim for punitive damages should be stricken because the pleading fails to make the requisite

Case No. 9:16-cv-80870 ZLOCH/HUNT

showing by evidence in the record that the Trustee was guilty of intentional misconduct or gross negligence.

WHEREFORE, Defendant respectfully requests that this Court enter an Order granting her Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint and striking Plaintiff's claim for punitive damages.

<div style="margin-left:40%">

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendant Robin R. Weiner, Esq.
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone: (561) 383-9200
Facsimile: (561) 683-8977

By: /s/ Nicole Wall_____
    NICOLE WALL
    Florida Bar No.: 017430
    Email: Nicole.Wall@csklegal.com
    BARRY POSTMAN
    Florida Bar No. 991856
    Email: Barry.Postman@csklegal.com

</div>

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 1st day of August, 2016, we electronically filed the foregoing document with the Clerk of Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<div style="margin-left:40%">

By:   /s/ Nicole Wall
    NICOLE WALL
    FBN:  017430
    E-Mail: Nicole.Wall@csklegal.com

</div>

Case No. 9:16-cv-80870 ZLOCH/HUNT

## <u>SERVICE LIST</u>

Joseph L. Worrell
P.O. Box 30071
West Palm Beach, FL  33420
<u>joworr@yahoo.com</u>; <u>joseph.worrell@navy.mil</u>
***VIA EMAIL***

Steven M. Davis, Esq.
Becker & Poliakoff, P.A.
121 Alhambra Plaza
10th Floor
Coral Gables, FL  33134
<u>sdavis@becker-poliakoff.com</u>
***VIA CM/ECF***

Alan J. Fisher, Esq.
Alan J. Fisher, P.A.
7000 W Camino Real
Suite 240
Boca Raton, FL 33433
<u>alan@alanfisherpa.com</u>
***VIA CM/ECF***

l:\1919-0337-00\pleading\complaint, answer\motion - to dismiss from robin weiner- final.docx