UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:16-cv-80870 ZLOCH/HUNT

JOSEPH L. WORRELL,
And Military Dependents,
Jointly and Severally,

      Plaintiffs,

v.

EMIGRANT MORTGAGE COMPANY, INC.,
BECKER & POLIAKOFF, P.A., ROBIN R.
WEINER, ESQ., ALAN J. FISHER, PA.

      Defendants.
_____/

## DEFENDANT'S MOTION TO DISMISS COUNTS I, II, AND III OF PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

COMES NOW, Defendant, Alan J. Fisher, P.A., and pursuant to Federal Rule of Civil Procedure 12, and hereby files this Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint,[1] and, in support thereof, states as follows:

### FACTUAL AND PROCEDURAL BACKGROUND

**A.**     **The Above-Captioned Case**

This action involves claims against Alan J. Fisher, P.A. ("AJFPA") and other named Defendants for alleged violation of the Servicemember's Civil Relief Act ("SCRA") and other federal statutes (Count I of the Complaint), negligent infliction of emotional distress (Count II of the Complaint), intentional infliction of emotional distress (Count III of the Complaint), fraud (Count IV of the Complaint), willful violation and disregard of U.S. Bankruptcy laws (Count V of the Complaint), breaking and entering/illegal seizure/invasion of privacy/willful violation of constitutional rights (Count VI of the Complaint), willful violation and disregard of RESPA and TILA (Count VII of the Complaint), and conversion (Count VIII of the Complaint), arising out of Plaintiff's prior bankruptcy case and a Co-Defendant's mortgage foreclosure and related sale of his home.

---

[1] The remaining five counts of the Complaint are not directed toward AJFPA. Notwithstanding same, to the extent that it is determined that a response to such causes of action is required, and to the extent otherwise applicable to Plaintiff's allegations throughout the Complaint, AJFPA joins in the arguments advanced by Robin R. Weiner, Esq., Emigrant Mortgage Company, Inc. and Becker & Poliakoff, P.A., in their Motions to Dismiss the Complaint, incorporating same as if fully stated herein.

Joseph Worrell ("Plaintiff") filed for Chapter 13 bankruptcy in March of 2009. *See,* Complt. ¶¶6, 41. Robin R. Weiner, Esq., is the standing Chapter 13 Trustee for the Southern District of Florida, Fort Lauderdale and Palm Beach Divisions, responsible for administering Chapter 13 cases, including those filed by the Plaintiff. *Id., generally* at ¶44. On May 31, 2016, Plaintiff filed a Complaint against AJFPA, Robin R. Weiner, Esq. (hereinafter "the Trustee"), Emigrant Mortgage Company, Inc., and Becker & Poliakoff, P.A., which was served upon AJFPA on June 3, 2016.[2] With regard to the allegations against AJFPA, the Complaint states only that Plaintiff filed for bankruptcy on March 26, 2009, and that AJFPA conspired with the Trustee to get Plaintiff's bankruptcy case dismissed. *See,* Complt. ¶¶ 6, 68. Plaintiff also claims that AJFPA acted negligently, and "likely" conspired with the Trustee in other counts in the Complaint related to the Trustee. *Id.* at ¶¶ 6, 69. Plaintiff alleges that the Trustee should have opposed or avoided Emigrant's claim and compelled Emigrant to cancel its alleged foreclosure sales on March 30, 2009 and August 31, 2009. *Id.* at ¶¶ 6, 8, 46, 54, 59, 61. Plaintiff further claims that the Trustee wrongfully had his case dismissed twice by misrepresenting that he had failed to make payments under his Plan for the benefit of creditors. *Id.* at ¶¶ 47, 63, 64, 88. Based on such allegations, Plaintiff maintains that AJFPA violated the SCRA and other federal statutes, and negligently and intentionally inflicted emotional distress upon him.

**B.   Plaintiff's Underlying Bankruptcy Case**

Defendant provides the following summary and history of Plaintiff's underlying bankruptcy case.[3] On March 26, 2009, Plaintiff filed a second Chapter 13 Voluntary Petition, Pro Se, regarding

---

[2] This Court granted AJFPA's Unopposed Motion for Extension of Time to Respond to the Complaint, providing AJFPA with an extension through October 11, 2016 to file its Response. *See,* D.E. 19.

[3] Defendant respectfully requests that this Court take judicial notice of the court filings and hearing transcripts in Plaintiff's bankruptcy case. The Eleventh Circuit has held that when considering a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to dismiss to a motion for summary judgment. This is because such documents are capable of accurate and ready determination. *Makro Capital of America, Inc. v. UBS AG,* 372 F.Supp.2d 623, 627 (S.D.Fla.2005) (citing *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1279–80 (11th Cir.1999)); *see also Universal Express, Inc. v. SEC,* No. 05–13142, 2006 WL 1004381, at * 1–2 (11th Cir.2006). Thus, the Court may take judicial notice of documents filed in other judicial proceedings, because they are public documents, without converting the motions to dismiss filed herein to motions for summary judgment, *see Universal Express,* 2006 WL 1004381, at * 2. Additionally, when ruling on a motion to dismiss, the court may consider a document outside the face of the complaint (and the documents attached thereto) if the plaintiff refers to the document in his complaint, the document is central to a claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss. *Fin. Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1285 (11th Cir. 2007). In this regard, documents from Plaintiff's bankruptcy case can be considered by this Court in reaching its determination because Plaintiff's Complaint refers to such bankruptcy case, its documents, and the alleged testimony at

Case No. 9:16-cv-80870 ZLOCH/HUNT

the same property. *See,* Exhibit A, attached hereto. The deadline to file a Chapter 13 Plan, Schedules A-J, Statement of Financial Affairs, Payment Advices and Statement of Current Monthly Income and Disposable Income Calculation was April 10, 2009. *See,* Exhibit B, attached hereto. On said date, Plaintiff filed a Notice of Supplementing Filing, and Notice of 50 U.S.C. § 501 Application, the latter of which sought a stay under the Servicemembers' Civil Relief Act ("SCRA") until his pre-deployment military obligations were completed after May 30, 2009. *See,* Exhibit C, attached hereto. The Court construed the Notice of Supplementing Filing as a Motion to Extend Deadline to File Plan and Schedules, and the Notice of 50 U.S.C. § 501 Application as an Application for Stay of Proceedings pursuant to 11 § U.S.C. 522. *See,* Exhibit D, attached hereto. The Court granted the Motion for Extension, extending the deadline to May 7, 2009. *Id.* The Court denied the Application for Stay of Proceedings because it did not comply with the requirements to obtain a stay under the SCRA. *Id.*

On May 7, 2009, Plaintiff filed a Chapter 13 Plan, Schedules A-J, Statement of Financial Affairs, Payment Advices and Statement of Current Monthly Income and Disposable Income Calculation. *See,* Exhibit E, attached hereto. Plaintiff's Chapter 13 Plan included monthly payments in the amount of $1,500.00 to Emigrant Mortgage Company for the first eighteen months, and payments in the amount of $2000.00 for the following 18 months. *Id.* The Trustee noted several deficiencies in the Plan and Schedules that would need to be addressed. Despite filing a proposed Chapter 13 Plan, Plaintiff failed to make the first two required monthly payments under the (pre-confirmation) Plan due on April 26, 2009 and May 26, 2009. *See,* Exhibit F, attached hereto. The Meeting of Creditors pursuant to 11 U.S.C. § 341 (hereinafter "Meeting of Creditors") was set for June 22, 2009, at which Plaintiff failed to appear. *See,* Exhibit G, attached hereto. On July 1, 2009, the Court entered an Order Dismissing Case for Failure to Make Pre-Confirmation Plan Payments and for Failure to Appear at the Meeting of Creditors. *See,* Exhibit H, attached.

On August 12, 2009, Plaintiff filed a Motion to Stay Proceedings and Motion to Vacate the Dismissal. *See,* Exhibits I and J, attached hereto. Plaintiff was represented by other counsel, not the movant herein, at the hearing on the Motions. *See,* Exhibits K and L, attached hereto. However, no other party or counsel was present at the hearing because Plaintiff's counsel failed to provide notice of the hearing. *See,* Exhibit L. Regardless, the Court found that the requirements of section 522 were satisfied this time and a stay was thus warranted. *See,* Exhibits K and L, attached hereto. hearings

in connection with it; the above-captioned lawsuit is squarely based on Plaintiff's bankruptcy case, which is central to his claim; and the bankruptcy case documents are attached hereto.

Case No. 9:16-cv-80870 ZLOCH/HUNT

The resulting Order, entered on September 1, 2009, provided that pursuant to the SCRA, all proceedings in the case were stayed until April 30, 2010 (the date by which Plaintiff's counsel, Nelson A. Hunter (hereinafter "Hunter"), retained for the sole purpose of the hearing, stated Plaintiff would have returned from his deployment). *Id.* The Court set the Confirmation Hearing for August 13, 2010 and Meeting of Creditors for June 28, 2010. *See,* Exhibit M, attached hereto.

On October 30, 2009, Emigrant filed a Motion to Allow Proof of Claim as Timely Filed, attaching the proposed Proof of Claim in the amount of $623,955.05 for a recorded note and mortgage; foreclosure judgment, which was set for hearing on May 14, 2010. *See,* Exhibits N and O, attached hereto. Said proposed Proof of Claim attached a Final Summary Judgment of Foreclosure and Award of Attorney's Fees and Costs, awarding Emigrant the subject amount. *See,* Exhibit M. On May 14, 2010, Emigrant Mortgage Company, Inc.'s Motion was granted and its Proof of Claim was filed. The Trustee reviewed the Proof of Claim with attached state court judgment and, pursuant to her Motion to Dismiss, found it to be valid on its face and found no basis to object to the claim.

Plaintiff's attorney filed a Motion to Withdraw as Counsel, which was granted at the August 13, 2010 Hearing, and reduced to an Order submitted by Hunter on August 17, 2010. *See,* Exhibit P, attached hereto. Plaintiff indicated at the hearing that he had been speaking to another attorney (Kenneth Noble) about his case; however, said attorney was not present. *See,* Exhibit Q, pgs. 5-7, attached hereto. To accommodate the Plaintiff in deference to his service and contrary to standard procedures, the Trustee recommended continuing the Confirmation Hearing and the Meeting of the Creditors, despite the fact that the Trustee asserted that the Plaintiff was delinquent in several of his Plan payments that had come due. *Id* at pgs. 5, 7-8*;* Exhibit F.[4]   The Trustee reminded Plaintiff that he needed to catch up on his payments, as she informed him that she was unable to further continue the matter if he was delinquent. *See,* Exhibit Q, 8:6-13. In this regard, the Confirmation Hearing was continued to September 10, 2010, and the Meeting of Creditors was continued to September 23, 2010. *See,* Exhibit R, attached hereto. On August 25, 2010, the Trustee filed an Objection to Plaintiff's Claim of Exemptions, which was set to be heard at the September 10, 2010 hearing. *See,* Exhibit S, attached hereto.

At the September 10, 2010 Confirmation Hearing, Plaintiff stated that he recently returned from deployment and had been with AJFPA, who was not present at the hearing because he had not been retained by Plaintiff.

---

[4] Plaintiff had failed to make monthly payments for six months, namely, April, May, and July of 2009, and May, June, and July of 2010. *Id.*

4

The Trustee recommended continuing the Confirmation Hearing (and hearing on her Objection) to October 8, 2010. *See,* Exhibit T, attached hereto. At the October 8, 2010 hearing, AJFPA appeared on Plaintiff's behalf, despite not being retained, and requested an additional continuance to review the documents he had received from Plaintiff and to contact the Trustee's Office directly to ensure that all of the deficiencies could be addressed. *See,* Exhibit U, attached hereto. Based upon AJFPA's proffer, and in deference to Plaintiff's service, the Trustee recommended yet another continuance, resulting with the Confirmation Hearing (and Objections to Exemptions) being reset to November 12, 2010. *See,* Exhibit V, attached hereto. The Trustee made such recommendation, despite the facts that the case was a year and a half old, nearly six months had elapsed since the stay due to military service expired, and Plaintiff had yet to become current under his proposed Plan.[5]

Plaintiff failed to provide AJFPA with the necessary documents to provide to the Trustee or otherwise resolve the deficiencies. *See,* Exhibit W, attached hereto. Thus, as of the November 12, 2010 Confirmation date (19 months since the filing of the case), no documents were submitted to the Trustee and no amended schedules or plan were filed. *Id.* Plaintiff also had not become current under the proposed Plan payments to the detriment of the creditors.[6] The Trustee provided an update to the Court, and made an unusual request for a dismissal of the case without prejudice (contrary to the Court's standard procedure of dismissal with prejudice for 6 months) for the immediate filing of a new Chapter 13 case to begin again, as an accommodation to the Plaintiff and deference to his service. *See,* Exhibit W. The Court accepted the Trustee's request and stated that "what the Trustee has suggested is actually very friendly to the Debtor, and that is, let him start over again," and AJFPA stated that he would be happy with such course of action. *Id,* lines 22-25. On November 19, 2010, the Court entered an Order Denying Confirmation and Dismissing Chapter 13 Case, without prejudice, thus allowing Plaintiff to file a new case. *See,* Exhibit X, attached hereto. However, Plaintiff never retained AJFPA and did not file a new case.[7]

On November 18, 2015, five years after the filing of the Plaintiff's case, Plaintiff filed a Motion to Reopen Chapter 13 Case and for Adversary Proceedings. *See,* Exhibit AA, attached

---

[5] Plaintiff had failed to make monthly payments for seven months, namely, April, May, and July of 2009, and May, June, July, and August of 2010. *See,* Exhibit F.

[6] Plaintiff had failed to make monthly payments for eight months, namely, April, May, and July of 2009, and May, June, July, August, and October of 2010. *See,* Exhibit F.

[7] Instead, Plaintiff filed a Motion to Reinstate Case and Motion for Stay of Proceedings, and a subsequent Motion to Reopen Chapter 13 Proceedings, both of which were denied. *See,* Exhibit Y, attached hereto.

hereto. The Court denied the Motion to Reopen and granted the Motion to file an adversary proceeding, entering an Order stating that the case is "reopened solely so that the Debtor may     file . . . an appropriate pleading seeking relief against creditor Emigrant Mortgage Company for alleged violation of the automatic stay." *See,* Exhibit BB, attached hereto. On January 17, 2016, Plaintiff filed an Adversary Complaint against Emigrant Mortgage Company, alleging that it violated the stay by selling his home. *See,* Exhibit CC, attached hereto.  On April 12, 2016, the  court dismissed the Adversary Complaint, stating that neither an automatic stay nor a SCRA stay was in effect on August 31, 2009, the date of the foreclosure sale.  *See,* Exhibit DD, attached hereto.

## SUMMARY OF THE ARGUMENT

Counts I, II, and III of Plaintiff's Complaint should be dismissed for the following five reasons: (1) Plaintiff's claims are barred by the statute of limitations, (2) Count I of Plaintiff's Complaint for violation of the SCRA and other statutes fails to state a cause of action for which relief may be granted, (3) Count II of Plaintiff's Complaint for negligent infliction of emotional distress is barred by the impact rule, (4) Count III of Plaintiff's Complaint  for intentional infliction of emotional distress fails to state a cause of action for which relief may be granted, and (5) the portions of Counts I, II, and III of Plaintiff's Complaint regarding dismissal of his bankruptcy case are facially deficient. Additionally, Plaintiff's claim for punitive damages should be stricken because the pleading fails to make the requisite showing of intentional misconduct or gross negligence.

## LEGAL STANDARD GOVERNING A MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hirshon v. King & Spotting,* 467 U.S. 69, 73 (1984); *See also, Hazel v. Schl. Bd. of Dade County*, 7 F.Supp.2d 1349, 1352 (S.D. Fla. 1998) (holding that a motion to dismiss will be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief"); *Mallo v. Public Health Trust of Dade Cty*, 88 F.Supp. 1376 (S.D. Fla. 2000). A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. *Hazel,* 7 F.Supp.2d 1349. Importantly, a complaint must allege facts properly setting forth the essential elements of a cause of action. *Hazel*, 734 F.Supp.2d at 1352. In making a determination relative to the sufficiency of the Complaint, the Court may not consider documents

Case No. 9:16-cv-80870 ZLOCH/HUNT

outside the pleadings on Rule 12(b)(6) motions. *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999). Dismissal of a complaint is appropriate on the basis of a dispositive issue of law or when there is no necessity to construe factual allegations contained within the complaint. *Marshall Cty Bd. of Ed. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171 (11th Cir. 1993). If the defendant demonstrates beyond doubt that the plaintiff can prove no set of facts to support his claim, then a motion to dismiss should be granted. *Mallo,* 88 F.Supp. 1376.

## MEMORANDUM OF LAW

### A.    Plaintiff's Claims are Barred by the Statute of Limitations

Each of Plaintiff's causes of action against AJFPA is time-barred. Plaintiff claims, without specifically identifying any conduct by AJFPA, that AJFPA violated the SCRA and other federal statutes, negligently inflicted emotional distress upon him, and intentionally inflicted emotional distress upon him. by allowing his bankruptcy case to be dismissed twice, and AJFPA could not have failed to oppose or avoid Emigrant's mortgage foreclosure claim and failed to compel Emigrant to cancel its foreclosure sale(s) in 2009, because it was not counsel to the Plaintiff at that time. *See,* Complt., *generally.* Plaintiff's bankruptcy case was initially dismissed on July 1, 2009, and was subsequently dismissed on November 19, 2010. *See,* Exhibits H and X. The foreclosure sales Plaintiff takes issue with allegedly occurred on March 30, 2009 and August 31, 2009, before AJFPA had ever appeared in the case.  *See,* Complt. ¶¶ 6, 8.

Actions founded on a statutory liability, actions founded on negligence, and actions for intentional torts must be commenced within four (4) years. *See,* Fla. Stat. § 95.11(3). Accordingly, the four year statute of limitations began to run on the above dates, and expired between March 30, 2013 and November 19, 2014. However, Plaintiff failed to file his lawsuit against the AJFPA until late May of 2016, between one and a half and three years after the applicable statute of limitations had lapsed. As such, Plaintiff's causes of action are time barred due to their not having been filed within the four year statute of limitations applicable to the subject claims, and thus, should be dismissed. Indeed, a motion to dismiss based upon the statute of limitations is appropriate when the grounds for its application are apparent in the Complaint. *Elmore v. Florida Power & Light Co.*,  760 So.2d 968, 971 (Fla. 4th Dist App. 2000); *Hanano v. Petrou*, 783 So.2d 637, 638.

**B.   Count I of Plaintiff's Complaint for Violation of Federal Statutes Fails to State a Cause of Action for Which Relief May be Granted.**

In Count I, Plaintiff claims that the Trustee (1) violated 32 U.S.C. §505, and 11 U.S.C. §§ 362 and 349, and (2) violated his rights and protections by getting his bankruptcy case dismissed when he was deployed from Florida and unable to adequately defend himself. *See,* Complt. ¶68, 69, 80, 88. With regard to the former contention, Plaintiff fails to identify a single act taken by the Trustee that constituted a violation of such Act or statutes, let alone allege how such mystery acts equated to violations. Significantly, Count I of Plaintiff's Complaint begins with paragraph 71. Paragraphs 71-79 advance several allegations of acts claimed to have been taken by Emigrant and Becker & Poliakoff, P.A. Such paragraphs are devoid of any allegations regarding acts claimed to have been taken by AJFPA.  Paragraph 68 makes the conclusory allegation that AJFPA conspired somehow with the Trustee to get his bankruptcy case dismissed based upon information misrepresented by the Trustee.  No allegations of misrepresentation are made against AJFPA.  No allegations of actions taken by AJFPA which contributed to the alleged conspiracy are set forth in the Complaint.  Paragraph 69 makes the conclusory allegation that AJFPA somehow acted negligently and repeats the same conspiracy claims in the preceding paragraph as a basis to hold AJFPA "accountable on most claims on other counts related to WIENER (sic)." Paragraph 80 makes the conclusory allegation that Emigrant, and its agent (which Plaintiff claims to be Becker & Poliakoff, P.A.), and the Trustee violated the above-listed statutes. As stated, Plaintiff does not claim that any of the alleged acts that supposedly

violated the subject statutes were taken by AJFPA. Instead, Plaintiff claims that each of the alleged acts was taken by Emigrant Mortgage Company or Becker & Poliakoff, P.A. Plaintiff's failure to advance factual allegations against AJFPA connecting it to the claim renders same subject to dismissal. *See e.g., Hanley v. The Sports Authority, Inc.,* 1998 U.S. Dist. LEXIS 21081 (S.D. Fla. 1998) (dismissing certain individual defendants based on plaintiff's failure to allege facts with respect to those defendants which would warrant them being individual defendants); *Showers v. City of Bartow,* 978 F.Supp. 1464, 1467 (M.D. Fla. 1997) (dismissing complaint as to individual defendant where plaintiff failed to allege what actions or inactions of the

Case No. 9:16-cv-80870 ZLOCH/HUNT

individual connected her  to the lawsuit).

Similarly, in order to defeat a motion to dismiss, a plaintiff must do more than merely label a claim. *Medalie v. FSC Sec. Corp.,* 87 F.Supp.2d 1295, 1298 (S.D. Fla. 2000). Likewise, the pleading standard outlined in Federal Rule of Civil Procedure 8 demands more than an unadorned, "the-defendant-unlawfully-harmed-me" accusation. *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009). By contrast, a complaint must allege facts properly setting forth the essential elements of a cause of action. *Hazel*, 734 F.Supp.2d at 1352. Indeed, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft,* 129 S. Ct. 1937. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* In this regard, factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" on the assumption that all of the allegations in the complaint are true (even if doubtful in fact).  *Id.*

Importantly, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.,* 550 U.S. 544, 555.  Indeed, recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft,* 129 S. Ct. 1937. Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id*. Similarly, a complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. Further, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation," or unwarranted deductions of fact. *Bell Atlantic Corp.,* 550 U.S. 544, 555; *South Florida Water Management District,* 84 F.3d 402, 409 n. 10 (11th Cir. 1996). Significantly, in evaluating a Complaint for sufficiency, a court must not assume that the plaintiff can prove facts not alleged or that the defendant violated relevant laws in ways not alleged. *Quality Foods de Centro America, S.A. v. Latin*

Case No. 9:16-cv-80870 ZLOCH/HUNT

*American Agribusiness Development Corp. S.A.*, 711 F.2d 989, 995 (11th Cir. 1983). A court may not consider inferences which are either not supported by, or inconsistent with, the factual allegations contained in the complaint. *See Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 416 F.3d 1242, 1253 (11th Cir. 2005). It is clear from the above that Plaintiff's claim falls far short of satisfying the general pleading requirements applicable to all lawsuits.

With regard to Plaintiff's latter contention regarding the dismissals (as pled in paragraph 88 of the Complaint), Plaintiff fails to identify a single law constituting a "right" or "protection" that AJFPA violated, let alone how AJFPA's alleged conduct violated the mystery law. It follows from the above law regarding basic pleading requirements that Plaintiff's claim must be dismissed. In any event, both dismissals of Plaintiff's bankruptcy case by the Court, occurring in July of 2009 and November of 2010, were proper and lawful for the reasons outlined in section B above.

It follows that Count I of the Complaint must be dismissed.

## C.  Count II of Plaintiff's Complaint for Negligent Infliction of Emotional Distress is Barred by the Impact Rule.

In order to recover damages for emotional distress caused by the negligence of another in Florida, the plaintiff must show that the emotional distress flows from physical injuries sustained in an impact. *Elliott v. Elliott*, 58 So.3d 878, 880 (Fla. 1st Dist. App. 2011) (citing *Fla. Dep't of  Corr. v. Abril*, 969 So.2d 201, 206 (Fla. 2007)). This requirement is known as the "impact rule," which operates to bar cases in which the plaintiff claims mental or emotional damages but has  not sustained any physical impact or contact. *Willis v. Gami Golden Glades, LLC*, 967 So.2d 846, 849 (Fla. 2007). "'[T]he underlying basis for the [impact] rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims.'" *Elliott*, 58 So.3d 878, 880 (citing *Gracey v. Eaker*, 837 So.2d 348, 355 (Fla. 2002)). The exception to the

Case No. 9:16-cv-80870 ZLOCH/HUNT

requirement that the plaintiff sustain physical impact applies when the plaintiff suffers from a physical injury as a result of psychological trauma arising from her witnessing/being involved with an event causing the negligent injury to another person who she has a close personal relationship to. *Zell v. Meek,* 665 So.2d 1048, 1049 (Fla. 1995); *Watters v. Walgreen Co.,* 967 So.2d 930, 931 (Fla. 1st Dist. App. 2007).    Thus, the application of the "impact rule" reflects a dichotomy under the law for cases in which the plaintiff is claiming damages for mental pain and anguish, with the prerequisites for recovery for negligent infliction of emotional distress differing depending on whether the plaintiff has or has not suffered a physical impact from an external force. *Willis*, 967 So.2d at 849. Specifically, if the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself. *Willis,* 967 So.2d at 849; *Elliott,* 58 So.3d at 880. If, however, the plaintiff has not suffered an impact, the complained-of mental distress must be manifested by a discernable physical injury, the plaintiff must be "involved" in the incident that involved a closely related person by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical injury "within a short time" of the incident.  *Id.*

Plaintiff does not, and cannot, claim that he sustained any impact, let alone that he suffered any physical injuries from same. Thus, Plaintiff's claim for negligent infliction of emotional distress is barred by Florida's impact rule. The exception to the impact rule is inapplicable to this case, as Plaintiff does not, and cannot, allege that he suffered from a physical injury as a result of psychological trauma arising from him witnessing/being involved with an event causing the negligent injury to another person who he has a close personal relationship to. By contrast, Plaintiff merely claims that he suffered emotional distress, including sleeplessness, anxiety, depression, and humiliation, as a result of AJFPA's conspiring with the Trustee in getting his bankruptcy case dismissed and failing to oppose or avoid Emigrant's mortgage foreclosure claim and sale, even when AJFPA had no involvement in the case. *See,* Complt. ¶¶ 100, 101. It follows that Plaintiff's claim for negligent infliction of emotional distress fails and must be dismissed.

Case No. 9:16-cv-80870 ZLOCH/HUNT

### D. Count III of Plaintiff's Complaint for Intentional Infliction of Emotional Distress Fails to State a Cause of Action for Which Relief May be Granted.

In order to state a cause of action for intentional infliction of emotional distress, a plaintiff must establish that "(1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Stewart v. Walker*, 5 So.3d 746, 749 (Fla. 4th Dist. App. 2009) (citing *LeGrande v. Emmanuel, 889 So.2d 991, 994 (Fla. 3d Dist. App. 2004)*).

Plaintiff's Complaint makes the conclusory allegation that AJFPA's facilitated in having his case dismissed and not opposing/avoiding Emigrant's mortgage foreclosure claim and sale constituted intentional, extreme, vindictive, and outrageous conduct, which caused him severe emotional distress. *See,* Complt. ¶¶ 102-104. However, Plaintiff cannot, under any circumstances, satisfy the second requirement of the above-outlined test, namely, that AJFPA's conduct was outrageous. Importantly, Florida law places an extremely high burden on the plaintiff to satisfy the "outrageous" requirement. Indeed, The Restatement of Torts defines the type of outrageous conduct needed to support the second element of the tort of intentional infliction of emotional distress as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 cmt. d (1965). In applying such standard, the subjective

Case No. 9:16-cv-80870 ZLOCH/HUNT

response of the person who is the target of the actor's conduct does not control the question of whether the tort of intentional infliction of emotional distress occurred. *Liberty Mutual Ins. Co. v. Steadman*, 968 So.2d 592, 595 (Fla. 2d Dist. App. 2007) (citing *Ponton v. Scarfone*, 468 So.2d 1009, 1011 (Fla. 2d Dist. App. 1985) (quoting *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278 (Fla. 1985)). Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is "atrocious, and utterly intolerable in a civilized community." *Id.* Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact. *Id*; *Ponton, 468 So. 2d at 1011.*

Applying the above-referenced standard to the subject case, it is clear that Plaintiff cannot establish the existence of the outrageous conduct required to establish a cause of action for intentional infliction of emotional distress against AJFPA. Indeed, the Court's dismissals of Plaintiff's bankruptcy case due to Plaintiff having failed to appear at the Meeting of the Creditors, make the requisite plan payments, and provide the necessary documentation/cure the deficiencies, and the Trustee's failing to object to or oppose Emigrant's mortgage foreclosure claim/sale due to Emigrant having obtained a Final Summary Judgment of Foreclosure (which set a foreclosure sale), by no stretch of the imagination constitutes conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Instead, AJFPA's actions provided the Plaintiff with the opportunity to file a new bankruptcy case immediately which might have assisted the Plaintiff in preserving his interests. The Plaintiff chose not to file a new case and, instead, do nothing to preserve his interests except file this Complaint. AJFPA was never retained by the Plaintiff yet provided assistance to the Plaintiff which was beneficial to the Plaintiff, had Plaintiff chosen to avail himself of the opportunity presented to him. Instead, he has chosen to blame AJFPA for damages it could not have caused in connection with attempting to represent the Plaintiff in his bankruptcy case. It follows from the above-discussion that Plaintiff cannot establish a claim for intentional infliction of emotional distress under any circumstances. Accordingly, his claim must be dismissed.

Case No. 9:16-cv-80870 ZLOCH/HUNT

**E. The Portions of Counts I, II, and III of Plaintiff's Complaint Regarding Dismissal of His Bankruptcy Case are Facially Deficient.**

All of Plaintiff's causes of action are grounded, in part, upon AJFPA's willingness to go along with the Trustee's recommendation to the Court that the bankruptcy case be dismissed without prejudice to the filing of a new case. As discussed in section B above, both dismissals were lawful, proper, and warranted. However, even if they were not, Plaintiff's claims would still fail because the AJFPA's conduct would not have been the cause of Plaintiff's alleged damages. Importantly, it is basic legal precept that to recover damages in law, a plaintiff must show that the defendant violated a duty that resulted in damages to the plaintiff. *NOB Holdings Corp.,* 426 B.R. at 922.

Plaintiff cannot establish that AJFPA's conduct caused Plaintiff's damages. To be sure, the evidence reflects that any damages Plaintiff allegedly suffered from dismissal of his bankruptcy case were caused by his actions or inactions. With regard to the first dismissal, which occurred before AJFPA was involved in the case, same was due to Plaintiff's failure to make the first two required monthly payments under the (pre-confirmation) Plan, namely, April and May, and failure to appear at the Meeting of Creditors which was set for June 22, 2009. *See,* Exhibits H and F.  The second dismissal was due to Plaintiff's repeated failure to provide A J F P A  a n d , t h u s , the Trustee with the necessary documents or otherwise resolve the deficiencies, and Plaintiff's remaining delinquent in payments,[11] by month 19 of his bankruptcy case.  Indeed, AJFPA stated at the hearing in which the Trustee recommended dismissal, "We've asked him for documents, so that we could properly represent him. Truthfully, he hasn't gotten us everything, not nearly close to everything that we would need to properly represent him . . . he's not doing that which is necessary to help himself." *See,* Exhibit W, lines 12-21. In any event, the Court's dismissal was without prejudice, allowing Plaintiff to re-file the case. *See,* Exhibit X.  At the subject court hearing, the Trustee, AJFPA, and the Court all specifically discussed and agreed to allowing Plaintiff to start over again. *See,* Exhibit W, lines 22-25. In line therewith, the Order Dismissing Chapter 13 Case stated

---

[11] Plaintiff had failed to make monthly payments for eight months, namely, April, May, and July of 2009, and May, June, July, August, and October of 2010.  *See,* Exhibit F.

14

Case No. 9:16-cv-80870 ZLOCH/HUNT

that the dismissal was without prejudice. *See,* Exhibit X. Despite same, Plaintiff failed to re-file his bankruptcy case. Thus, it cannot be said that "but for" AJFPA's negligence, Plaintiff would not have

sustained the damages alleged to have occurred due to his case being dismissed. To be sure, had Plaintiff re-filed his case, he would not have suffered the claimed damages. As such, it is abundantly clear that the only breach of duty causing Plaintiff's damages was that committed by Plaintiff alone.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES

Plaintiff's Complaint seeks punitive damages as a result of AJFPA's alleged intentional acts. *See,* pgs. 17, 18, 19 and 23 of Plaintiff's Complaint. Pursuant to Florida Rule of Civil Procedure 1.190(f) and Florida Statute § 768.72, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. *See also, Cypress Aviation, Inc. v. Bollea*, 826 So.2d 1091, 1092 (Fla. 2d Dist. App. 2002) (holding that a plaintiff is required to provide the court with an evidentiary basis for punitive damages before the court may allow a claim for punitive damages to be included in a plaintiff's complaint). Specifically, a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was guilty of intentional misconduct or gross negligence. Fla. Stat. § 768.72. Plaintiff has failed to follow the above-referenced procedural requirement, as Plaintiff has failed to make the requisite reasonable showing by evidence in the record that Defendant was guilty of intentional misconduct or gross negligence and, thus, entitled to punitive damages. As such, Plaintiff's claim for punitive damages should be stricken.

## CONCLUSION

In conclusion, Counts I, II, and III of Plaintiff's Complaint should be dismissed for several reasons. First, Plaintiff's claims are barred by the statute of limitations. Second, Count I of Plaintiff's Complaint for violation of the SCRA and other statutes fails to state a cause of action for which relief may be granted. Third, Count II of Plaintiff's Complaint for negligent

Case No. 9:16-cv-80870 ZLOCH/HUNT

infliction of emotional distress is barred by the impact rule.  Fourth, Count III of Plaintiff's Complaint for intentional infliction of emotional distress fails to state a cause of action for which relief may be granted. Fifth, the portions of Counts I, II, and III of Plaintiff's Complaint regarding dismissal of his bankruptcy case are facially deficient. Finally, Plaintiff's claim for punitive damages should be stricken because the pleading fails to make  the  requisite showing by evidence in the record that AJFPA was guilty of intentional misconduct or gross negligence.

WHEREFORE, Defendant respectfully requests that this Court enter an Order granting its Motion to Dismiss Counts I, II, and III of Plaintiff's Complaint and striking Plaintiff's claim for punitive damages.

Alan J. Fisher, P.A.
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Telephone: (561) 300-3375
Facsimile: (561) 300-3381

By: /s/ Alan
Fisher_____ Alan Fisher
Florida Bar No.: 043291
Email:
alan@alanfisherpa.com

Case No. 9:16-cv-80870 ZLOCH/HUNT

<u>**CERTIFICATE  OF SERVICE**</u>

WE HEREBY CERTIFY that on this 8th day of November, 2016, we electronically filed the foregoing document with the Clerk of Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/Alan Fisher

Alan Fisher
Florida Bar No.: 043291
Email:alan@alanfisherpa.com

**<u>SERVICE LIST</u>**

Joseph L. Worrell
P.O. Box 30071
West Palm Beach, FL 33420
joworr@yahoo.com;
joseph.worrell@navy.mil
***VIA EMAIL***

Steven M. Davis, Esq.
Becker & Poliakoff, P.A.
121 Alhambra Plaza
10th Floor
Coral Gables, FL 33134
sdavis@becker-poliakoff.com
***VIA CM/ECF***

Robin R. Weiner, Esq.
c/o Nicole Wall, Esq.
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Nicole.Wall@csklegal.com
***VIA CM/ECF***